IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KIMBERLY CHIPMAN                                                    PLAINTIFF

v.                                    Case No. 3:15-cv-143 KGB

DALE COOK, individually and officially as Sheriff                    DEFENDANT

## OPINION AND ORDER

Plaintiff Kimberly Chipman is the former office manager of the Sheriff's Department of Mississippi County, Arkansas. On December 26, 2015, she was fired. Defendant Dale Cook is the Sheriff of Mississippi County, Arkansas, as he was when Ms. Chipman's employment was terminated. He was Ms. Chipman's direct supervisor. Ms. Chipman brings this action against Sheriff Cook in his individual and official capacities. She claims that she was the victim of sexual harassment as well as gender, age, and disability discrimination in volition of Title VII, 42 U.S.C. § 2000e-2; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101, *et seq.* (Dkt. No. 1, ¶¶ 25-26). She also brings interference and discrimination claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* (*Id.*, ¶ 27).

Both parties have moved for summary judgment. Sheriff Cook moves for summary judgment on all of Ms. Chipman's claims (Dkt. No. 25). Ms. Chipman moves for summary judgment only on her FMLA claims (Dkt. No. 28). For the following reasons, the Court finds that Sheriff Cook is entitled to summary judgment on all of Ms. Chipman's claims.

### I.    Background

The following facts are taken from Sheriff Cook's statement of material indisputable facts, unless otherwise indicated (Dkt. No. 27). Ms. Chipman began working for the Mississippi County

Sheriff's Department in 2000.  She was initially hired as a secretary by Sheriff Leroy Meadows, who later changed her title to office manager.  Ms. Chipman was serving as the office manager when Sheriff Cook became the Mississippi County Sheriff in 2011.  From 2011 to her termination, Sheriff Cook was Ms. Chipman's direct supervisor.

Ms. Chipman's menstrual cycle is painful and makes her feel tired approximately two or three days per month.  Her issues with her menstrual cycle began before Sheriff Cook became her direct supervisor in 2011 and have persisted to the present day.  While she was employed at the Mississippi County Sheriff's Department, Ms. Chipman did not discuss making any work accommodations related to her condition.  Her menstrual cycle does not affect her ability to see, hear, eat, sleep, speak, breathe, learn, read, think, or communicate with others.  Ms. Chipman has not produced any medical evidence to confirm that any medical care provider has helped her manage her menstrual cycle condition.  Ms. Chipman has not undergone any procedures to address the issues that she is having with her menstrual cycle.  She has not discussed any available procedures with her physicians, and her condition has not caused her to be hospitalized or to visit the emergency room to help manage her condition.

On Monday, December 16, 2013, Ms. Chipman was involved in a car accident on her way to work. She was transported to the emergency room in Blytheville, Arkansas, where she underwent x-rays on her left knee.  Ms. Chipman was prescribed 500 mg Naproxen tablets and was instructed to take one tablet twice a day as needed for severe pain (Dkt. No. 33, at 2).  Ms. Chipman contends that the attending physician in the emergency room told her to rest as needed and not to return to work until the pain was manageable (*Id*.).  She claims the attending physician also advised her that she could follow up with her primary care physician, Dr. Richard Hester, or

a specialist, Dr. Joseph Yao, if her symptoms did not improve (*Id.*).[1]  She was not admitted to the hospital and was released from the emergency room that day.  She did not receive additional medical treatment for the injuries she sustained in the car accident after her initial visit to the emergency room.

After her car accident, Ms. Chipman called her boyfriend, Andrew Pritchard.  Mr. Pritchard contacted Major Larry Robinson and Marsha Robinson, who worked for the Mississippi County Sheriff's Department as a bookkeeper and administrative assistant respectively, to inform them that Ms. Chipman had been involved in a car accident.  One or both of the Robinsons contacted Sheriff Cook, who was out of the office on a hunting trip, to notify him that Ms. Chipman had been in a car accident and would be unable to make it to work.  Sheriff Cook responded to Ms. Robinson by text message, confirming that he had received the message.  Ms. Chipman and Mr. Pritchard never contacted Sheriff Cook directly while Ms. Chipman was off of work.  However, Ms. Chipman texted Ms. Robinson throughout the week of December 16 to 20, 2013, to keep the office informed of her status.  On Thursday, December 19, 2013, Ms. Chipman told Ms. Robinson that she would return to work on Monday, December 23, 2013 (*Id.*, at 3).

Ms. Chipman was aware of the FMLA, as she administered it for the Mississippi County Sheriff's Department as a part of her job duties.  She also had taken FMLA leave in the past.  Ms.

---

[1]  Ms. Chipman largely relies on her own affidavit in support of her assertions regarding the physician's instructions (Dkt. No. 33, at 2; Dkt. No. 30-6).  Sheriff Cook argues that this information should not be considered at the summary judgment stage because Ms. Chipman's evidence is hearsay.  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012).  "[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form."  *Id.* (emphasis in original).  While Ms. Chipman's affidavit is based on hearsay evidence, the information could be presented at trial in an admissible form:  through the testimony of the attending physician.  Sheriff Cook's hearsay objection is overruled.

Chipman did not request FMLA leave for her time off after the car accident in December 2013, as she did not believe that she needed it. The Sheriff's Department did not offer Ms. Chipman time off under the FMLA during her absence (Dkt. No. 33, at 4).

The Mississippi County Employment Policy Handbook ("Policy Handbook") at Section VIII under Disciplinary Action, Section D, states "three days absence without notifying the elected official and/or supervisor will be an automatic dismissal from the Mississippi County employment." (Dkt. No. 27, ¶ 41). Sheriff Cook was Ms. Chipman's direct supervisor, not Major Robinson or Ms. Robinson. On certain occasions, Ms. Chipman was instructed to contact Ms. Robinson instead of Sheriff Cook if she needed to miss work. Sheriff Cook claims, and Ms. Chipman does not dispute, that Ms. Chipman was only instructed to contact Ms. Robinson when she would be absent due to "female issues" (Dkt. No. 35, at 2). Furthermore, Sheriff Cook claims, and Ms. Chipman does not dispute, that in these circumstances, Ms. Chipman was still required to inform him that she was not coming in to work (*Id.*). However, in his deposition, Sheriff Cook conceded that, since he was out of town and had poor cell phone service on the dates in question in December 2013, it was proper for Ms. Chipman to contact Major Robinson and Ms. Robinson (Dkt. No. 30-12, at 8).

The Policy Handbook also provides that any absence for two consecutive days must be documented by a medical statement with a date of availability to return to work. While Ms. Chipman was out of work after the car accident, Ms. Robinson reminded her by text message that she needed a doctor's note to return to work. Ms. Chipman replied, "I don't need this right now" (Dkt. No. 27, ¶ 66).

Ms. Chipman returned to work on Monday, December 23, 2013. She did not have a doctor's note. On December 26, 2013, Sheriff Cook terminated her employment. In the document

titled Notice of Employment Termination provided to Ms. Chipman, Sheriff Cook claimed that Ms. Chipman's employment was being terminated because she was "not at work any day last week and did not make any contact with me, a supervisor, or any other Mississippi County elected official to my knowledge" (Dkt. No. 29-3, at 1). He also stated in the notice that she was being terminated because of her "unexcused absences" (*Id.*). Sheriff Cook concluded the notice by stating that, "[o]ver the last year, you have repeatedly been counseled and warned about not following the County Employment Policies. I have lost confidence in you as an employee of the Mississippi County Sheriff's Department" (*Id.*). The notice of termination informed Ms. Chipman of her right to request a hearing before the County Grievance Committee, at which she could ask the Committee "to enforce the county employment policy that prohibits an elected official from violating the law or the constitution" (*Id.*). Sheriff Cook hired Jennifer Brooks, who is in her mid-20s, to fill Ms. Chipman's position. Ms. Chipman was 44 years old when she was fired.

In the year leading up to her termination, Ms. Chipman received two formal disciplinary notices and at least one complaint was made to Sheriff Cook about Ms. Chipman's job performance. On February 7, 2013, Ms. Chipman received a document titled Notice of Change of Job Description and Written Warning regarding discrepancies in her personal time sheet accounting. Sheriff Cook citied instances where Ms. Chipman submitted time sheets indicating that she worked hours when she was actually out of the office on sick or vacation time (Dkt. No. 27-2, at 30). On September 13, 2013, Sheriff Cook received a letter from Brenda Burke, the Finance & Human Resources Director for Mississippi County, in which Ms. Burke complained about Ms. Chipman's job performance, specifically that Ms. Chipman was not submitting the proper paperwork to Ms. Burke's office so that Ms. Burke could correctly administer the Sheriff Department's payroll (*Id.*, at 31-32). On October 22, 2013, Ms. Chipman received a document

titled Notice of Employment Suspension Without Pay, in which Sheriff Cook stated among other things that he had "witnessed a change in [her] dedication to the job" (*Id.*, at 33). In the notice, Sheriff Cook asserted that Ms. Chipman continued to submit incorrect time sheets, and he claimed that "it has come to my attention that you are making mistakes and that there is also a lack of customer service that I am not willing to accept from my office manager" (*Id.*).

Ms. Chipman claims that Sheriff Cook sexually harassed her in 2011. She states that, on one occasion, Sheriff Cook gave her $200 and an advertisement from Victoria's Secret on which he wrote suggestions for bras (Dkt. No. 33, at 6).[2] Ms. Chipman did not formally report this incident. She also claims that there were between five to ten other incidents when Sheriff Cook made comments about her attire, specifically telling her to dress more feminine and to buy skirts, which she found inappropriate and offensive (*Id.*). Sheriff Cook admits that he once told Ms. Chipman that, if she was going to wear a hat to work, "it had to look more 'lady-like' and 'feminine'" (Dkt. No. 27, ¶ 27). Sheriff Cook claims, and Ms. Chipman does not dispute, that Ms. Robinson, or someone else, complained to Sheriff Cook that Ms. Chipman was wearing inappropriate attire at work. Sheriff Cook claims, and Ms. Chipman does not dispute, that Ms. Burke also found on at least one occasion that Ms. Chipman was not in appropriate attire at work. Ms. Chipman claims that she told others about the incident involving the money and Victoria's Secret advertisement, and she believes "that this incident played into the decision to terminate her because [Sheriff Cook] found out that she had told people about the card" (Dkt. No. 33, at 7).

---

[2] Sheriff Cook denies that this incident occurred but argues that, for the purposes of summary judgment, even if this incident occurred he still would be entitled to summary judgment on Ms. Chipman's sexual harassment claim (Dkt. No. 26, at 28).

## II.      Standard Of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.      Discussion

Sheriff Cook moves for summary judgment on all of Ms. Chipman's claims.  Ms. Chipman moves for summary judgment only on her claims under the FMLA.

### A.      Gender Discrimination

Ms. Chipman claims that her rights under Title VII and the ACRA were violated when Sheriff Cook "discriminated against Plaintiff by telling her to wear different clothes and treating her in a manner different from other male employees" (Dkt. No. 1, ¶ 25).  Sheriff Cook argues that

he is entitled to summary judgment on Ms. Chipman's gender discrimination claims because: (1) Ms. Chipman cannot state a *prima facie* case of gender discrimination; and (2) even if she could, she cannot establish that Sheriff Cook's nondiscriminatory reason for terminating her was merely a pretext for discrimination.

Title VII and ACRA claims are governed under the same standard. *See, e.g.*, *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009). An employment discrimination plaintiff may survive a motion for summary judgment through "proof of 'direct evidence' of discrimination . . . [or] through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011); *see also McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

Ms. Chipman urges the Court to apply the mixed-motives analysis of *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989). The Court applies this analysis to a claim of racial discrimination based on direct evidence. *See Yates v. Douglas*, 255 F.3d 546, 548 (8th Cir. 2001). Under *Price Waterhouse,* once the plaintiff persuades a factfinder that, more likely than not, discrimination was "a motivating part in an employment decision," 490 U.S. at 258, the burden shifts to the employer to prove that the employment decision would nevertheless have been made for legitimate, non-discriminatory reasons. *Id.; Beshears v. Asbill,* 930 F.2d 1348, 1353 (8th Cir.1991). To be entitled to this direct-evidence analysis, however, a plaintiff must present "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. Southeast Mo. Comm. Treatment Ctr.,* 133 F.3d 616, 619 (8th Cir.1998) (citation omitted). Ms.

Chipman argues that Sheriff Cook's use of "gender specific comments about Ms. Chipman prior to firing her" should be direct evidence that she was terminated because of her gender.

Sheriff Cook urges the Court to analyze Ms. Chipman's claim under the *McDonnell Douglas* format, contending that she does not offer direct evidence of gender discrimination. The United States Supreme Court's decision in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), established the burden-shifting framework used to analyze employment discrimination claims. "Under this scheme, a plaintiff first must establish a prima facie case of discrimination . . . ." *Wilking v. County of Ramsey*, 153 F.3d 869, 872 (8th Cir. 1998). If Ms. Chipman establishes a *prima facie* case, then the burden shifts to Sheriff Cook to articulate a legitimate, non-discriminatory reason for the action. *Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011). If Sheriff Cook meets his burden, the burden shifts back to Ms. Chipman to present facts that, if proven at trial, would permit a jury to conclude that Sheriff Cook's proffered reason was pretext and that unlawful discrimination was the true reason for the adverse employment action. *Id.*

Under the burden shifting framework of *McDonnell Douglas*, to establish a *prima facie* case of discrimination under Title VII or the ACRA, Ms. Chipman must show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently or there are facts permitting an inference of discrimination. *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 716 (8th Cir. 2012); *Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 2034 (8th Cir. 2006). Sheriff Cook acknowledges that Ms. Chipman satisfies the first and third elements; she is female and was terminated from her position. For purposes of analyzing his motion for summary judgment only, Sheriff Cook takes the position that Ms.

Chipman also can satisfy the second element of the *prima facie* case, but he argues that she "cannot meet the fourth element, i.e., evidence of improper motivation" (Dkt. No. 26, at 16). In response, Ms. Chipman argues that Sheriff Cook's use of "gender specific comments about Ms. Chipman prior to firing her" permits the inference that she was terminated because of her gender (Dkt. No. 32, at 16).

Regardless of the method this Court uses to analyze Ms. Chipman's gender discrimination claim—*Price Waterhouse* or *McDonnell Douglas*—the Court's focus becomes Sheriff Cook's alleged use of "gender specific comments about Ms. Chipman prior to firing her" (Dkt. No. 32, at 16).

### 1.    Direct Evidence And *Prima Facie* Case

"'Not all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision.'" *Stacks v. Sw. Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1324 (8th Cir. 1994) (quoting *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir. 1993)); *see also Lewis*, 591 F.3d at 1041 ("We recognize that '[r]emarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision.'") (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989)). "Specifically, an inference of causation is not supported by 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" *Gartman v. Gencorp Inc.*, 120 F.3d 127, 131 (8th Cir. 1997) (quoting *Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir. 1991)).

The Court finds that Sheriff Cook's alleged comments do not serve as direct evidence of discrimination under *Price Waterhouse* or permit an inference of discrimination under *McDonnel*

*Douglas*.  It is undisputed that Sheriff Cook was Ms. Chipman's direct supervisor and was the decision maker regarding the termination of her employment.  However, the comments at issue do not appear to be related in any way to the decisional process that resulted in Ms. Chipman's termination.  There are only two specific comments alleged in the record before the Court:  Sheriff Cook's comment about the hat and the incident with the Victoria's Secret advertisement.  It is unclear when Sheriff Cook made the comment about Ms. Chipman's hat, and there is evidence that other employees who were not decisionmakers complained about the hat's appearance.  Sheriff Cook's comments about Ms. Chipman's wardrobe appear to be stray remarks in the workplace unrelated to the decisional process.  *Gartman*, 120 F.3d at 131 ("Unlike those noncontemporaneous statements by decisionmakers that have been held sufficient to support an inference of discrimination, Hunnicutt's impulsive remark, uttered in a passing moment of frustration, bore no relation to the decisional process itself.").  The Court notes that at least one of Ms. Chipman's female coworkers, Ms. Burke, found Ms. Chipman's attire to be inappropriate for the workplace.

Further, according to Ms. Chipman, the alleged incident with the Victoria's Secret advertisement occurred in 2011, two years before Ms. Chipman was fired.  While this alleged incident is serious, the incident in 2011 and the December 26, 2013, decision to terminate Ms. Chipman are too attenuated for a reasonable fact finder to draw an inference of gender discrimination.  *Id.* ("Unlike those noncontemporaneous statements by decisionmakers that have been held sufficient to support an inference of discrimination, Hunnicutt's impulsive remark, uttered in a passing moment of frustration, bore no relation to the decisional process itself."); *Yates v. Douglas*, 255 F.3d 546, 549 (8th Cir. 2001) (finding no direct evidence where offensive comments by supervisor occurred one to two years in advance of termination decision and thus

11

"are therefore best classified as statements by a decisionmaker unrelated to the decisional process"); *Simmons v. Oce-USA, Inc.*, 174 F.3d 913 (8th Cir. 1999) (finding no direct evidence where a white supervisor told one racially offensive joke and used the term "buckwheat" once during the course of the plaintiff's employment because the remarks were made two years before the decision to terminate and no causal connection was established). The Court acknowledges that Ms. Chipman suggests that, prior to her termination, Sheriff Cook learned that she had told others about his conduct regarding the Victoria Secret card and that this played some role in his decision to terminate her. The record evidence upon which she relies for this suggestion is too speculative to carry her burden at the summary judgment stage (Dkt. No. 32, at 8; Dkt. No. 27-1, at 97–103).

Ms. Chipman offers no other evidence that would permit an inference of discrimination. For example, she presents no other evidence of remarks or conduct related to the decisional process nor does she present evidence that male co-workers were involved in or accused of the same or similar conduct but disciplined in different ways. Therefore, she fails to meet her initial burden of establishing a *prima facie* case under either *Price Waterhouse* or the *McDonnell Douglas* framework. Sheriff Cook's motion for summary judgment on Ms. Cook's gender discrimination claim is granted.

### 2.    Non-Discriminatory Reason And Pretext

Even if Ms. Chipman were able to establish a *prima facie* case of gender discrimination, the Court concludes that, on the overall record evidence, Sheriff Cook still would be entitled to summary judgment on her gender discrimination claim. Sheriff Cook offers two legitimate, nondiscriminatory reasons for Ms. Chipman's termination: Ms. Chipman's "job performance deteriorated over time to the point he lost confidence in her" and the "last straw" was that she violated the Mississippi County Policy Handbook by missing a week of work "without submitting

a doctor's excuse for her week long absence" (Dkt. No. 26, at 17). Sheriff Cook also contends that Ms. Chipman violated the Mississippi County Policy Handbook by not contacting him directly during her week long absence and that this is an additional non-discriminatory reason for her termination (Dkt. No. 26, at 17). While the Court concludes that a reasonable factfinder could find that this proffered reason is pretextual, the Court determines that no reasonable jury could find that the overall explanation asserted for Ms. Chipman's termination is pretext for gender discrimination.

To pass through the third stage of the *McDonnell Douglas* analysis and arrive at a trial, a plaintiff must show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). The Supreme Court has observed that "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515 (1993) (emphasis in original); *see Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). However, even evidence that "'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146–47 (2000) (quoting *Hicks*, 509 U.S. at 524); *see Hicks,* 509 U.S. at 519 (holding that "[i]t is not enough. . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination") (emphases in the original)). Of course, evidence that the defendant's explanation is false does not necessarily mean the plaintiff obtains a trial. "[T]here will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148.

This Court concludes that no reasonable jury could find that the overall explanation asserted for Ms. Chipman's termination is pretext for gender discrimination.  Record evidence supports that Sheriff Cook believed Ms. Chipman's job performance deteriorated over time to the point he lost confidence in her, and she violated the Mississippi County Policy Handbook by missing a week of work without submitting a doctor's excuse for her absence.  The Court concludes that a reasonable jury could find that Sheriff Cook's third reason proffered is false— Ms. Chipman contacted Ms. Robinson daily during her absence, and Sheriff Cook admitted that it was proper for Ms. Chipman to contact Ms. Robinson that week because he was out of town with poor cellular service (Dkt. No. 30-12, at 8).  However, "[t]he critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he [or she] was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3d 855, 862–62 (8th Cir. 2009) (citing *Hitt v. Harsco Corp*., 356 F.3d 920, 924 (8th Cir. 2004); *Scroggins v. Univ. of Minn*., 221 F.3d 1042, 1045 (8th Cir. 2000)).  Overall, taking all record evidence into account and construing it in the light most favorable to Ms. Chipman, the Court resolves that Ms. Chipman does not meet her burden to show both that the reasons proffered by Sheriff Cook were false and that discrimination was the real reason.

The Eighth Circuit Court of Appeals' decision in *Lewis v. Heartland Inns of America, L.L.C*, 591 F.3d 1033 (8th Cir. 2010), upon which Ms. Chipman relies in her response to Sheriff Cook's motion for summary judgment, is instructive.  In *Lewis*, the court found that a supervisor's comments based on gender stereotypes permitted an inference that the decision to terminate the plaintiff was discriminatory.  *Lewis*, 591 F.3d at 1041.  The *Lewis* court also found that a reasonable fact finder could find that the defendant's proffered legitimate reason for the plaintiff's

termination was a mere pretext for discrimination because: (1) the defendant offered shifting explanations for the plaintiff's termination; (2) the defendant did not follow its own termination procedures; and (3) the defendant's claim that her termination was due to poor performance was contradicted by the evidence. *Id.* ("Evidence that Heartland's reason for the termination were pretextual include the fact that Lewis had a history of good performance at Heartland. She had no prior disciplinary record and had received two merit based pay raises. The two individuals who supervised her during the majority of her employment at Heartland both stated that they had no problem with her appearance, and at least one customer had never seen customer service like that Lewis had provided. On this record, a factfinder could infer a discriminatory motive in Heartland's actions to remove Lewis.").

By comparison, in this case, there is no similar evidence of pretext. Sheriff Cook has offered consistent reasons for Ms. Chipman's termination, and he provided those reasons to Ms. Chipman in writing at the time. There is no evidence that Mississippi County did not follow its termination procedures in regard to Ms. Chipman. The record evidence before the Court supports Sheriff Cook's claim that Ms. Chipman was terminated for legitimate purposes, as Ms. Chipman received multiple disciplinary notices in the months prior to her termination and did not appeal those warnings, despite being advised of the procedure to do so. *See Gibson v. American Greetings Corp.*, 670 F.3d 844, 854–55 (8th Cir. 2012) (examining record evidence to support employer's reason for termination). Further, it is undisputed that Sheriff Cook replaced Ms. Chipman with a female employee. *See Roach v. Vallen Safety Supply Co.*, Case No. 00-2709, 2001 WL 347112 (8th Cir. April 11, 2011) (determining plaintiff did not satisfy the final element in that she was replaced by a female and the circumstances surrounding her dismissal did not raise an inference of discrimination)

Therefore, even if Ms. Chipman were able to make her *prima facie* case, this Court concludes that Sheriff Cook still would be entitled to summary judgment on her gender discrimination claim.

## B.    Claims Under The ADA

Ms. Chipman claims that her rights under the ADA were violated by Sheriff Cook's actions (Dkt. No. 1, ¶ 26).  Sheriff Cook argues that Ms. Chipman is not entitled to relief under the ADA because she is not disabled and was not perceived as being disabled.  Ms. Chipman did not respond to Sheriff Cook's ADA arguments in her response to Sheriff Cook's motion for summary judgment, and she has not requested an extension of time to do so.  In failing to respond to Sheriff Cook's motion for summary judgment on her ADA claims, Ms. Chipman has failed to contest the arguments Sheriff Cook sets forth in his motion.  Ms. Chipman has waived any arguments that may have been available to her on these claims.  *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

In addition, Sheriff Cook is entitled to summary judgment on the merits.  To obtain relief under the ADA, Ms. Chipman must make a *prima facie* showing that she:  (1) is a qualified individual under the ADA; (2) suffered discrimination as the term is defined by the ADA; and (3) the discrimination was based on disability as defined by the ADA.  *Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013).  Sheriff Cook argues that Ms. Chipman's termination did not violate the ADA.  Specifically, he argues that her ADA claim fails because she cannot show that she suffers from a disability for the purposes of the ADA.  The ADA defines disability as:  "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment

(as described in paragraph (3)).” 42 U.S.C. § 12102(1). Ms. Chipman claims that she is disabled because she suffers from “severe and debilitating symptoms related to menopause” (Dkt. No. 1, ¶ 10).

Sheriff Cook cites authority that predates the 2008 Americans with Disabilities Amendments Act (“ADAAA”) to argue that menopause is not a qualifying disability. The cases cited, and that approach to disability under the ADA, no longer control. *See Rotkowski v. Ark. Rehabilitation Services*, 180 F.Supp.3d 618 (W.D. Ark. 2016) (examining the ADAAA and its impact on the qualifying disability analysis). Even under the ADAAA, to establish that she is actually disabled, Ms. Chipman must show that her symptoms related to menopause “‘substantially limit[] one or more of the major life activities of [an] individual.’” 42 U.S.C. § 12102(1)(A). “[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.” 42 U.S.C. § 12102(2)(A). It is undisputed that Ms. Chipman’s menstrual cycle “did not affect her ability to see, hear, eat, sleep, speak, breathe, learn, read, think, or communicate with others.” (Dkt. No. 27, ¶ 19). Sheriff Cook concedes, however, that Ms. Chipman’s condition temporarily impacted her ability to stand, lift, walk, and work because she needed to lay down when her symptoms required it (Dkt. No. 26, at 18). On this record evidence, the Court cannot say that, as a matter of law, Ms. Chipman is not disabled under the ADAAA. *See Hubbard v. Day & Zimmerman Hawthorne Corp.*, Case No. 3:12-cv-00681-MMD-VPC, 2015 WL 1281629 (D. Nev. March 20, 2015) (concluding that the record evidence was sufficient to create a genuine issue of material fact as to whether plaintiff’s menopause was a covered disability under the ADA).

However, Ms. Chipman has produced no record evidence from which a reasonable jury could conclude that Sheriff Cook discriminated against her based on her alleged disability. It is undisputed that Ms. Chipman did not discuss making work accommodations concerning her menstrual cycle with anyone (Dkt. No. 27, ¶ 21). There is insufficient evidence in the record for a reasonable jury to conclude that Sheriff Cook in some way failed to engage in the interactive process with Ms. Chipman. *See Minniham v. Mediacom Comm. Corp.*, 779 F.3d 803, 814 (8th Cir. 2015).

Further, Ms. Chipman has produced no record evidence from which a reasonable jury could conclude that her December 26, 2013, termination, which is the discrimination she alleges she suffered, was based on her alleged disability. It is undisputed that Ms. Chipman missed work from December 16 to 23, 2013, as a result of a car wreck, not because of her menstrual cycle. In addition, Sheriff Cook offers legitimate, nondiscriminatory reasons for Ms. Chipman's termination: Ms. Chipman's "job performance deteriorated over time to the point he lost confidence in her," the "last straw" that she violated the Mississippi County Policy Handbook by missing a week of work "without submitting a doctor's excuse for her week long absence," and that she allegedly violated the Mississippi County Policy Handbook by not contacting Sheriff Cook directly during her week long absence (Dkt. No. 26, at 17). Ms. Chipman offers no record evidence of pretext or to establish that disability discrimination was the real reason she was terminated. As a result, the Court concludes that Sheriff Cook is entitled to summary judgment on the merits of Ms. Chipman's ADA claims.

### C.     Claims Under The FMLA

There are three types of FMLA claims. *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012). The first type of FMLA claim, labeled an entitlement or

interference claim, occurs when an employer takes action to avoid responsibilities under the FMLA such as refusing to authorize leave, discouraging an employee from taking such leave, or chilling an employee's willingness to take FMLA leave by attaching negative consequences to the exercise of those rights. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). The second type, labeled a retaliation claim, occurs when an employer takes an adverse action against an employee for opposing any practice made unlawful under the FMLA. *Brown v. City of Jacksonville,* 711 F.3d 883, 890 (8th Cir.2013) (citing *Pulczinski*, 691 F.3d at 1005; *Lovland v. Emp'rs Mut. Cas. Co.,* 674 F.3d 806, 811 (8th Cir.2012)). The third type, labeled a discrimination claim, occurs when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA. *Id.*

Ms. Chipman brings interference and discrimination claims against Sheriff Cook.[3] She argues that, "[b]y failing to provide notice to Ms. Chipman in writing of requirements the County required to establish eligibility for FMLA leave, and then [failing] to provide her at least 15 days to provide said certifications," Sheriff Cook, in his individual and official capacities, interfered with her rights under the FMLA (Dkt. No. 30, at 7). She argues that, by firing her because she took "FMLA qualifying leave[,]" Sheriff Cook discriminated against her in violation of the FMLA (*Id.*, at 14).

In his motion for summary judgment and in his response to Ms. Chipman's motion for summary judgment, Sheriff Cook argues that Ms. Chipman's FMLA claims should be dismissed because she did not qualify for protection under the FMLA (Dkt. No. 30, at 22-24; Dkt. No. 34, at 2-6). To succeed on her entitlement and discrimination claims, Ms. Chipman must establish that

---

[3] Ms. Chipman mistakenly labels her FMLA discrimination claim as an FMLA retaliation claim.

she was, in fact, entitled to FMLA leave. *Johnson v. Wheeling Mach. Prod.*, 779 F.3d 514, 518 (8th Cir. 2015) ("To succeed on his entitlement claim for failure to reinstate, Johnson must establish that he was, in fact, entitled to FMLA leave and reinstatement. Similarly, to succeed on his claim that he was discriminated against for taking leave, Johnson must show that he was entitled to leave under the FMLA."). The FMLA provides that "an eligible employee is entitled to twelve weeks of unpaid leave during any twelve-month period for any of several reasons, including 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Thorson v. Gemini, Inc.*, 205 F.3d 370, 375 (8th Cir. 2000) (quoting 29 U.S.C. § 2612(a)(1)(D)). Ms. Chipman's FMLA claims are based solely on her absence after her car accident. The parties dispute whether her absence from work was the result of a "serious health condition."

For the purposes of the FMLA, "a serious health condition is 'an illness, injury, impairment or physical or mental condition' that involves either inpatient care or 'continuing treatment by a health care provider as defined in [29 C.F.R.] § 825.115.'" *Johnson*, 779 F.3d at 518 (alteration in original) (quoting 29 C.F.R. § 825.113(a) (2010)). Ms. Chipman argues that, after the car accident, she was under the continuing treatment of a health care provider (Dkt. No. 32, at 12). Department of Labor regulations provide that a serious health condition involving continuing treatment includes, in pertinent part:

> (a) *Incapacity and treatment.* A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves . . . [t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a). Ms. Chipman contends that she suffered from a serious health condition involving continuing treatment because she had an initial medical appointment at the emergency

room after her car accident, she was incapacitated for more than three consecutive days after the accident, and the emergency room physician "prescribed an ongoing regimen of pain medication and rest, and directed Ms. Chipman not to return to work until the pain became manageable" (Dkt. No. 32, at 12).

"[A] single treatment by a health care provider resulting in a prescription, coupled with the requisite period of incapacity, can establish a serious health condition under the regimen definition." *Johnson*, 779 F.3d at 520. However, the Department of Labor regulations also make clear that, for an employee to be suffering from a serious health condition involving continuing treatment, "the regimen of continuing treatment—in this case, a course of prescription medication—*must also be 'under the supervision of the health care provider.'*" *Id.* (emphasis added) (quoting 29 C.F.R. § 825.115(a)(2)). The fact "that a health care provider prescribes medication does not necessarily mean that the provider is 'supervising' the prescription regimen." *Id.* The policy reasons behind the supervision requirement are clear:

> By requiring that the health care provider supervise the regimen, the regulation helps to ensure that minor conditions will fall outside the FMLA's coverage, as Congress intended. If a person's health condition is indeed 'serious,' it follows that the patient's regimen of continuing treatment would involve either supervision—for example, a phone call with the health care provider to communicate updates on the patient's condition and progress—or a follow-up appointment soon after the first visit . . . .

*Id.* (internal citations omitted).

While the attending physician at the emergency room may have prescribed Ms. Chipman a regimen of pain medication, no doctor supervised a regimen of continuing treatment. There is no dispute that Ms. Chipman did not receive any additional medical treatment for the injuries sustained in the car accident after her initial visit to the emergency room. While the attending physician at the emergency room told her that she could follow up with her primary care physician,

Dr. Richard Hester, or a specialist, Dr. Joseph Yao, if her symptoms did not improve, Ms. Chipman does not claim that she followed up with either of these doctors.  There is no record evidence that the attending physician advised Ms. Chipman to call him if complications arose or her condition did not improve.  Therefore, the Court concludes that no health care provider was supervising Ms. Chipman's prescription regimen, meaning she "did not undergo 'a regimen of continuing treatment under the supervision of the health care provider.'"  *Id.* at 521.

For these reasons, Ms. Chipman "has not met [her] burden of establishing a genuine issue of material fact on the issue whether [she] met the regimen definition for a serious medical condition."  *Id.*  As this was her only basis for qualifying for rights under the FMLA, the Court finds that Ms. Chipman's FMLA claims must be dismissed.  The Court notes that Ms. Chipman argues that Sheriff Cook could be liable for violations of the FMLA, even if she did not have a serious health condition (Dkt. No. 32, at 8-12).  Ms. Chipman's argument is based on a misreading of *Thorson v. Gemini, Inc.,* 205 F.3d 370 (8th Cir.2000), which was rejected by the Eighth Circuit Court of Appeals in *Johnson v. Wheeling Machine Products*, 779 F.3d 514, 519 (8th Cir. 2015).[4]  Therefore, Sheriff Cook's motion for summary judgment on Ms. Chipman's FMLA claims is granted.  Ms. Chipman's motion for summary judgment is denied.

---

[4]    "Johnson argues that because U.S. Steel did not follow the FMLA's certification procedures, it is precluded by our holding in *Thorson v. Gemini, Inc.,* 205 F.3d 370 (8th Cir.2000), from now challenging the existence of a serious health condition.  *Thorson* did not create a *per se* preclusion rule, however, that would apply in all cases in which an employer fails to avail itself of the FMLA's certification procedures.  Instead, *Thorson* merely held that an employer could not use medical evaluations conducted long after the period of incapacity to create a genuine dispute of material fact over a plaintiff's incapacity when the plaintiff offered contemporaneous medical evidence of incapacity."  *Johnson*, 779 F.3d at 519.

D.    **Sexual Harassment Claims**

Ms. Chipman claims that the incident involving the Victoria's Secret advertisement constituted sexual harassment, and she seeks damages from Sheriff Cook.  Sheriff Cook argues that Ms. Chipman's sexual harassment claims must be treated as a hostile work environment claim and that her hostile work environment claim fails because "Sheriff Cook's alleged inappropriate conduct would amount to, at best, a few isolated incidents" (Dkt. No. 26, at 28).  Ms. Chipman did not respond to Sheriff Cook's arguments regarding her sexual harassment claims in her response to Sheriff Cook's motion for summary judgment, and she has not requested an extension of time to do so.  In failing to respond to Sheriff Cook's motion for summary judgment on her sexual harassment claims, Ms. Chipman has failed to contest the arguments Sheriff Cook sets forth in his motion.  Ms. Chipman has waived any arguments that may have been available to her on these claims.  *See Satcher*, 558 F.3d at 735 ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

In addition, Sheriff Cook is entitled to summary judgment on the merits.  There are two types of sexual harassment claims under Title VII:  (1) quid pro quo harassment, "where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions[;]" and (2) "hostile work environment harassment, where 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 908 (8th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).  "Sexual harassment is quid pro quo if a tangible employment action follows the employee's refusals to submit to a supervisor's sexual demands."  *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1026–27 (8th Cir. 2004) (citing

23

*Burlington Industries v. Ellerth,* 524 U.S. 742, 752 (1998)).  In this case, Ms. Chipman does not bring a quid pro quo sexual harassment claim because she does not allege that she rejected any sexual advances made by Sheriff Cook and that she suffered a tangible employment action as a result.  The Court notes that the alleged incident involving the Victoria's Secret advertisement occurred two years before Ms. Chipman's termination.  Therefore, her sexual harassment claim must be analyzed as a hostile work environment claim.

To establish a hostile work environment claim, Ms. Chipman has the burden of showing that:  "'(1) she is a member of a protected group, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of her employment.'" *McMiller v. Metro*, 738 F.3d 185, 188 (8th Cir. 2013) (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 419 (8th Cir. 2010)).  To be actionable, the "harassment must have been both objectively and subjectively offensive . . . ." *Nichols v. Tri-Nat'l Logistics, Inc.*, 809 F.3d 981, 985 (8th Cir. 2016), *reh'g denied* (Feb. 11, 2016).  "'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'" *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004) (quoting *Harris,* 510 U.S. at 21).  In determining whether alleged harassment is objectively offensive, courts consider all of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1158 (8th Cir. 1999)).

Ms. Chipman alleges that, in 2011, Sheriff Cook gave her $200 and a Victoria's Secret advertisement with written suggestions for bras on it.  She also claims that he made between five

and ten inappropriate comments about her attire, specifically telling her that she should purchase skirts and wear a hat that was more feminine. This conduct, even when taken as true with all reasonable inferences construed in Ms. Chipman's favor, is not severe or pervasive enough to create an objectively hostile or abusive work environment. Sheriff Cook's alleged conduct was less frequent and less severe than conduct that the Eighth Circuit Court of Appeals has found not to be actionable. For example, the Eighth Circuit found that a plaintiff failed to establish a hostile work environment claim where the plaintiff "asserted that a harasser asked him to watch pornographic movies and to masturbate together, suggested that the plaintiff would advance professionally if the plaintiff caused the harasser to orgasm, kissed the plaintiff on the mouth, 'grabbed' the plaintiff's buttocks, 'brush[ed]' the plaintiff's groin, 'reached for' the plaintiff's genitals, and 'briefly gripped' the plaintiff's thigh . . . ." *McMiller v. Metro,* 738 F.3d 185, 189 (8th Cir. 2013) (quoting *LeGrand v. Area Resources for Community and Human Services,* 394 F.3d 1098, 1100-03 (8th Cir. 2005)). In another case, the Eighth Circuit found that the plaintiff failed to establish a hostile work environment claim "where a supervisor had rubbed an employee's back and shoulders, called her 'baby doll,' 'accus[ed] her of not wanting to be one of [his] girls,' suggested once in a long-distance phone call 'that she should be in bed with him,' and 'insinuat[ed] that she could go farther in the company if she got along with him[.]'" *Id.* at 188-89 (quoting *Anderson,* 579 F.3d at 862).

The Court finds that Sheriff Cook's alleged conduct, if true, was unprofessional and demonstrated a lack of judgment but was not so severe or pervasive as to alter the terms and conditions of Ms. Chipman's employment under controlling Eighth Circuit authorities. Therefore, the Court grants Sheriff Cook's motion for summary judgment on Ms. Chipman's sexual harassment claim.

E.    Age Discrimination

Sheriff Cook moves for summary judgment on Ms. Chipman's age discrimination claim. Ms. Chipman did not respond to Sheriff Cook's arguments in her response to Sheriff Cook's motion for summary judgment, and she has not requested an extension of time to do so. In failing to respond to Sheriff Cook's motion for summary judgment on her age discrimination claim, Ms. Chipman has failed to contest the arguments Sheriff Cook sets forth in his motion. Ms. Chipman has waived any arguments that may have been available to her on these claims. *See Satcher*, 558 F.3d at 735 ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

In addition, Sheriff Cook is entitled to summary judgment on the merits. As a preliminary matter, the Court finds that Ms. Chipman failed to bring an age discrimination claim under the proper statute. In her complaint, Ms. Chipman claims that "she was subjected to discriminatory treatment based on her sex, age, and disability" (Dkt. No. 1¶ 9). However, she does not bring an age discrimination claim pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Assuming Ms. Chipman intended to bring an age discrimination claim, she appears to have attempted to do so under Title VII or the ACRA. However, "Title VII is not the proper statute for bringing such a claim." *Wanke v. Job Serv. N. Dakota*, No. 2:08-CV-94, 2009 WL 1259212, at *2 (D.N.D. May 1, 2009) (citing *Smith v. City of Jackson*, 544 U.S. 228, 253 (2005)). Ms. Chipman also cannot bring an age discrimination claim under the ACRA because the list of protected classes under the ACRA does not include certain age groups. Ark. Code Ann. § 16-123-107 (2017) ("The right of an otherwise qualified person to be free from discrimination because of race, religion, national origin, gender, or the presence of any sensory, mental, or physical disability is recognized as and declared to be a civil right."); *see also Bell v. Am. Greetings*

*Corp.*, No. 3:04CV00303 WRW, 2007 WL 1559946, at *3 (E.D. Ark. May 29, 2007), *aff'd*, 279 F. App'x 415 (8th Cir. 2008) ("Because ACRA does not protect against age discrimination claims, Plaintiffs' ACRA age discrimination claims are DISMISSED."). Therefore, Ms. Chipman's age discrimination claims under Title VII and the ACRA must be dismissed as a matter of law.

Even if Ms. Chipman were to allege properly an age discrimination claim under the ADEA, Sheriff Cook would be entitled to summary judgment. "The ADEA protects individuals aged 40 and over by prohibiting employers from discharging or otherwise discriminating against such individuals with respect to their compensation, terms, conditions, or privileges of employment on the basis of their age." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011) (citing 29 U.S.C. § 623(a)). To have a valid claim for age discrimination, Ms. Chipman has the burden of proving "by a preponderance of the evidence[] that age was the 'but-for' cause of" her termination. *Id.* (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009)). Like her gender discrimination claim, Ms. Chipman does not offer direct evidence of age discrimination, meaning her age discrimination claim must be analyzed using the *McDonnell Douglas* burden shifting framework. *Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011).

To establish a *prima facie* case of age discrimination, Ms. Chipman must show that: "(1) [s]he is over 40 years old, (2) [s]he met the applicable job qualifications, (3) [s]he suffered an adverse employment action, and (4) there is some additional evidence that age was a factor in the employer's termination decision." *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 800 (8th Cir. 2014) (quoting *Rahlf*, 642 F.3d at 637). Sheriff Cook concedes that, for the purposes of his motion for summary judgment, Ms. Chipman can establish her *prima facie* case (Dkt. No. 26, at 30-31). Unlike her gender discrimination *prima facie* case, Ms. Chipman has evidence that age was a factor in Sheriff Cook's decision to terminate her:  she was replaced by Jennifer Brooks,

27

who is in her mid-20s.  *See Haigh*, 632 F.3d at 468 (finding that the fourth element of the plaintiff's *prima facie* case was satisfied because the plaintiff was replaced by an individual who was substantially younger).

However, like her gender discrimination claim, Sheriff Cook offers a legitimate, nondiscriminatory reason for Ms. Chipman's termination, meaning the burden shifts back to Ms. Chipman to establish that Sheriff Cook's asserted reason is pretext.  Ms. Chipman does not meet this burden.  The fact that she was replaced by someone much younger than she was is not enough to establish pretext.  *Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007) ("Although Carraher was replaced by someone substantially younger than him, in this case 28 years younger, we have previously held that this fact, though necessary to establish a prima facie case, possesses 'insufficient probative value to persuade a reasonable jury that [plaintiff] was discriminated against.'") (quoting *Nelson v. J.C. Penney Co., Inc.,* 75 F.3d 343, 346 (8th Cir.1996)).  Therefore, the Court grants Sheriff Cook's motion for summary judgment on Ms. Chipman's age discrimination claim.

**IV.    Conclusion**

Sheriff Cook's motion for summary judgment is granted (Dkt. No. 25).  Ms. Chipman's motion for summary judgment is denied (Dkt. No. 28).  Ms. Chipman's claims against Sheriff Cook in his official and individual capacities are dismissed with prejudice.

So ordered this the 28th day of March, 2017.

Kristine G. Baker
United States District Judge

28